IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MINDY EDGMON,

        Plaintiff,

v.                                                        Case No. 6:16-cv-01334-JTM

NANCY A. BERRYHILL,[1]
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Mindy Edgmon applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging a disability beginning March 12, 2011. After her claim was denied by the Commissioner initially and upon reconsideration, Edgmon requested an evidentiary hearing before an Administrative Law Judge (ALJ). Edgmon appeared and testified at a hearing on October 6, 2014, in Wichita, Kansas, before ALJ Edward E. Evans. The ALJ issued a written ruling finding that Edgmon was not disabled within the meaning of the Act because she retains the ability to perform certain sedentary jobs. Tr. at 18-28. The decision of the Commissioner became final when the Appeals Council denied Edgmon's request for review.

Edgmon brings this appeal challenging the ALJ's decision on four grounds. First, she contends the ALJ ignored evidence of Edgmon's worsening impairments. Second, she contends the ALJ failed to consider evidence that Edgmon suffered episodic flare-

---

[1] Nancy A. Berryhill became Acting Commissioner on January 23, 2017. She is substituted for previous Acting Commissioner Carolyn W. Colvin. *See* Fed. R. Civ. P. 25(d).

ups of her impairments. Third, she argues the ALJ failed to give proper weight to the opinion of her treating physician. And fourth, Edgmon argues that the ALJ erred in evaluating her credibility. For the reasons stated herein, the court agrees that the ALJ failed to properly consider the opinions of plaintiff's treating doctor. Accordingly, the matter will be remanded to the ALJ for further consideration.

**I. Legal standard**

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as they are "supported by substantial evidence." 42 U.S.C. § 405(g). The court accordingly looks to whether the factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if she suffers from a physical or mental impairment which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This

impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal a designated impairment, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require a determination of whether the claimant

3

can either perform her past relevant work or can generally perform other work that exists in the national economy. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite the impairments, the claimant can perform other work in the national economy. *Id. See Weir v. Colvin*, No. 15-1300-JTM, 2016 WL 6164313, at *1–2 (D. Kan. Oct. 24, 2016).

**II. Analysis**

Plaintiff challenges the ALJ's ruling in four respects. But only one of those will be addressed here – the ALJ's assessment of the treating physician's opinion - because that issue requires a remand for further consideration by the ALJ, and such reconsideration may affect or render the other arguments moot.

An ALJ has an obligation to weigh the medical opinion of a treating physician under specified factors. *See* 20 CFR § 404.1527. The factors include the examining relationship (with more weight ordinarily given to the opinion of an examiner than a non-examiner), the treatment relationship (with more weigh ordinarily given to a treating source), the supportability of the opinion and underlying explanation (with more weight given to an opinion supported by relevant evidence such as medical signs and laboratory findings), the consistency of the opinion with the record as a whole, the specialization of the source (with more weight given to a specialist in the field), and other factors tending to support or contradict the opinion. § 404.1527(c)(1)-(6).

If the ALJ finds a treating source's medial opinion on the nature and severity of an impairment is well-supported by acceptable clinical and laboratory techniques and is not inconsistent with other evidence, the opinion must be given controlling weight. § 404.1527(c)(2). When the ALJ does not give the opinion controlling weight, the remaining factors (paragraphs (c)(2)(i) and (ii) and (c)(3)-(c)(6)) must still be considered in determining the weight to be given the opinion. § 404.1527(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (even if not given controlling weight, treating physician opinion is entitled to deference and must be weighed using the factors in § 404.1527). "[A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Langley*, 373 F.3d at 1120 (*quoting* SSR 96-2p, 1996 WL 374188, at *4).

The regulations require the ALJ to "always give good reasons in our notice of determination for the weight we give your treating source's medical opinion." § 404.1527(c). When a claim is denied, the ALJ's opinion "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5.

A review of the ALJ's opinion shows these legal requirements were not met. In assessing the medical opinion of plaintiff's treating physician Dr. Matthew Meschke, the ALJ specifically addressed only Meschke's medical source statement of July 11, 2012. That statement diagnosed plaintiff with fibromyalgia, left hip pain, chronic low back pain, and depression. Tr. at 21. Meschke opined that plaintiff could (among other things) lift up to 25 pounds, sit for 30 minutes at a time, stand for 30 minutes at a time, and work 3-4 hours per day. Tr. at 605. The ALJ found this statement was not supported by or tied to any specific test or diagnostic data, was conclusory, and its limitations "are inconsistent with [Meschke's] relatively benign treatment notes." The ALJ then "[held] the same" with respect to two later medical source statements by Meschke, both of which adopted more stringent limitations, saying only "there is no basis for the changes between these medical source statements." Tr. at 21.

In a medical source statement dated July 23, 2014, Meschke opined that plaintiff suffered from "severe pain," that she had an ability to stand for 15 minutes at a time and for a total of two hours in a workday, and that she could sit for 30 minutes at a time and for a total of two hours in a workday. The ALJ did not specifically address any of these opinions but, as indicated above, apparently dismissed or discounted all of the medical statements. In doing so, the ALJ gave no indication of the weight, if any, that he gave to any of Meschke's opinions. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) ("at the second step of the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors … [in the regulations] for the weight assigned"). Nor is

there any indication that the ALJ considered the other relevant factors in § 404.1527(c)(2), such as the nature of the examining and treatment relationship, in reaching his decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (although the ALJ is not required to conduct a factor-by-factor analysis, the opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.") (citation and quotation marks omitted).

The ALJ said Meschke's opinions were "not supported by … any specific test or diagnostic data." As the ALJ recognized elsewhere, plaintiff underwent an MRI on her left hip on July 3, 2014, only a few weeks before Meschke's July 23, 2014, medical statement. That test indicated a partial tear of the left gluteus minimus muscle, bilateral tendinosis of the gluteus medius/minimus tendons at the insertion point on the greater trochanter, and trochanteric bursitis of the right gluteus medius/minimus. Tr. at 610. Plaintiff also underwent several other diagnostic tests in prior years, including an MRI on her lumbar spine showing degenerative disc disease with a mild disc bulge to the right neuroforamina at L5-S1. The ALJ's opinion did not address whether the July 2014 MRI or any of plaintiff's other diagnostic tests lent any degree of support to Meschke's opinions. The ALJ also concluded that Meschke's opinions were contradicted by his "relatively benign treatment notes," but the ALJ's opinion did not cite anything from the notes and did not explain the alleged inconsistency.

Finally, the ALJ found that plaintiff's RFC included limitations of standing and walking in combination of up to 4 hours, and sitting for up to 6 hours. Tr. at 24. In

formulating the RFC, the ALJ stated that he gave plaintiff the benefit of the doubt and viewed the evidence in the light most favorable to her, including "the discounted medical source statements from Dr. Meschke." But as indicated previously, it is not clear what weight the ALJ ultimately gave Meschke's statements and his evaluation of Meschke's opinions did not satisfy the legal standard. Moreover, the ALJ did not explain how he determined the limitations for standing/walking up to 4 hours and sitting up to 6 hours. The record indicates these limitations likely came from two agency reviewing physicians, Dr. Gary Coleman (Tr. at 87) and Dr. C.A. Parsons (Tr. at 101), although neither of those doctors was mentioned in the ALJ's opinion. Inasmuch as the ALJ never discussed the opinions of thosse doctors, he clearly did not evaluate them as required by § 404.1527, and he did not offer any explanation for finding their opinions to be more credible than those of plaintiff's treating physician. This was procedural error. *See e.g., Ringgold v. Colvin*, 644 F.App'x 841, 846 (10th Cir. 2016) (the reviewing physicians did not examine plaintiff, "so the ALJ needed to provide good reasons sufficient to overcome the presumption that their opinions were entitled to less weight" than an examining physician); *Steele v. Colvin*, No. 15-1100-KHV, 2016 WL 4537748, *7 (D. Kan. Aug. 30, 2016) ("To the extent that the ALJ relied on inconsistencies between [the treating doctor's] opinion and the State agency non-examining doctors, the ALJ must explain why the opinions of reviewing physicians outweigh the opinion of the treating source"); *Goatcher v. U.S. Dept. of Health & Human Svcs.*, 52 F.3d 288, 290 (10th Cir. 1995) ("When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they

8

outweigh the treating physician's report, not the other way around.") [citation and internal quotation marks omitted]; *Hays v. Colvin*, 630 F.App'x 749, 754 (10th Cir. 2015).

The failure to address these various medical opinions in accordance with the regulations was error. Inasmuch as no showing is made that the error was harmless, the matter must be remanded to the ALJ to properly address these matters and any other issues impacted by them. By remanding, the court does not intend to suggest any particular outcome with respect to plaintiff's application. The matter is remanded only to assure that the correct legal standards are applied in reaching a decision on the claim. *See Angel v. Barnhart*, 329 F.3d 1208, 1214 (10th Cir. 2003).

**IT IS THEREFORE ORDERED** this 11th day of April, 2017, that the Commissioner's decision is REVERSED and the matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

\_\_\_s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE